UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | . | Criminal No. 1:14cr261 |
| | . | |
| vs. | . | Alexandria, Virginia |
| | . | January 9, 2015 |
| ROLANDO FELICIANO, | . | 9:52 a.m. |
| | . | |
| Defendant. | . | |
| | . | |
| . . . . . . . . . . | . | |

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE GERALD BRUCE LEE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:                MATT J. GARDNER, AUSA
                                   United States Attorney's Office
                                   2100 Jamieson Avenue
                                   Alexandria, VA 22314


FOR THE DEFENDANT:                 GEREMY C. KAMENS
                                   First Assistant Federal Public
                                   Defender
                                   Office of Federal Public Defender
                                   1650 King Street, Suite 500
                                   Alexandria, VA 22314
                                     and
                                   REBECCA GRAY, ESQ.
                                   Gibson, Dunn & Crutcher LLP
                                   1050 Connecticut Avenue, N.W.
                                   Washington, D.C. 20036-5306


COURT REPORTERS:                   RENECIA A. SMITH-WILSON, RMR, CRR
                                   ANNELIESE J. THOMSON, RDR, CRR


(Pages 1 - 16)


Proceedings reported by stenotype by Renecia A. Smith-Wilson;
transcript produced by Anneliese J. Thomson.

1                    P R O C E E D I N G S

2                      (Defendant present.)

3           THE CLERK:  1:14cr261, United States versus Rolando

4    Feliciano.

5           MR. GARDNER:  Good morning, Your Honor.  Matt Gardner

6    for the United States.

7           THE COURT:  Good morning.

8           MR. KAMENS:  Good morning, Your Honor.  Geremy Kamens

9    and Rebecca Gray on behalf of Mr. Feliciano.

10          THE COURT:  Good morning, Ms. Gray.  Good morning,

11   Mr. Kamens.

12          Good morning, Mr. Feliciano.

13          THE DEFENDANT:  Good morning, sir.

14          THE COURT:  Mr. Kamens, who's going to speak for

15   Mr. Feliciano?

16          MR. KAMENS:  I will, Your Honor.

17          THE COURT:  All right.  I take it that you and

18   Mr. Feliciano have reviewed the presentence report?

19          MR. KAMENS:  We have, Your Honor.

20          THE COURT:  Are there any objections to the report?

21          MR. KAMENS:  We have objections.  We've specified

22   them in our papers.  They specifically relate to the

23   application of the production guideline and also the

24   application of the enhancement for a pattern.

25          This is somewhat unusual in that the parties agree

1    that those enhancements shouldn't apply.  I can speak to them

2    briefly, and I would say this --

3          THE COURT:  Well, I've read both sides' submissions,

4    and I'm prepared to sustain the objections.  I prefer to adhere

5    to your (inaudible) as you-all have worked out, and I think

6    you-all have made a judgment.  I'm prepared to accept it.

7          MR. KAMENS:  Thank you, Your Honor.

8          THE COURT:  Let me hear from Mr. Gardner.

9          MR. KAMENS:  Thank you.

10         MR. GARDNER:  Thank you, Your Honor.  The

11   government's recommendation is for a sentence of 108 months in

12   custody.  This is obviously very serious conduct, and I'll just

13   highlight two portions of it.

14         First, it involved a long period of time,

15   approximately nine months, during which time Mr. Feliciano was

16   engaged on a regular basis, often many times during a day, in

17   grooming essentially the 13-year-old girl in this case.  He was

18   speaking with her on various means, you know, text messages,

19   iPhone, and other messaging services.

20         During that time, his -- he was mixing both threats,

21   threats, for instance, where he would say that if she wouldn't

22   respond to him quick enough, that he might kill himself, with

23   trying to help her, helping with her homework, for example, all

24   of which it's the government's position was designed to

25   ultimately result in these trips that he traveled from New

1    Jersey to Virginia in which he intended to engage in illicit

2    sexual conduct with a 13-year-old.  He did, in fact, drive down

3    and picked her up at her middle school in at least one of those

4    trips.  It's very serious conduct, and I think that speaks for

5    itself.

6         I will -- at one point on the psychiatric report

7    submitted by the defense, it's the government's position that,

8    that Mr. Feliciano's mental health in the psych report are

9    both -- it's mitigating and aggravating.  It's -- certainly

10   there is some sympathy for Mr. Feliciano based on his mental

11   health and his background.

12        At the same time, though, it's alarming to some

13   extent.  I think the doctor -- doctor's characterizations of

14   him was someone who may not be able to have the same cognitive

15   functioning and awareness that others would, which raises

16   concern for why he did this the first time, and it's not clear

17   how that necessarily will change in the future without a lot of

18   structure in his life.  So --

19        THE COURT:  Was there any indication that he had been

20   trolling Facebook for underage girls?

21        MR. GARDNER:  No indication one way or the other.

22        THE COURT:  All right.

23        MR. GARDNER:  So it's just simply unknown.

24        Portions -- large portions, we think -- of his

25   computer media we weren't able to recover.  What we did recover

1    I will say did not have indications that there were contact

2    with girls other than the 13-year-old girl in this case and one

3    of her friends that he was using as a go-between with the main

4    victim.

5            THE COURT:  All right.

6            MR. GARDNER:  So it's unknown beyond this would be

7    the government's position.

8            Lastly, Your Honor, the government's requested a

9    victim impact statement or restitution from the victim, and we

10   haven't received anything from her at this point, so there's no

11   victim impact statement or restitution request at this point.

12           THE COURT:  All right, thank you.

13           MR. GARDNER:  Thank you.

14           THE COURT:  Mr. Kamens?

15           MR. KAMENS:  Your Honor, this is a case that speaks

16   to why individualized sentencing is so critical to our system

17   of justice.  As the Supreme Court has said, it is important

18   that punishment should fit the offender and not simply the

19   crime.

20           Mr. Gardner, my colleague prosecutor in this case, is

21   absolutely correct, of course, that this is an undeniably

22   serious offense.  There is no dispute about that.  The question

23   here today is the appropriate punishment for Mr. Feliciano.

24           The brief details of Mr. Feliciano's life don't

25   really tell the Court why a sentence of 87 months is more than

1  sufficient in this case to accomplish the purposes of

2  sentencing.

3          He's 50 years old.  He lived in Elizabeth, New

4  Jersey.  He worked as a truck driver.  He had actually received

5  his CDL license, and as Mr. Feliciano has said, God put him on

6  this Earth to be a truck driver.  It is a significant

7  accomplishment in his life.

8          He lived alone in a room in a boardinghouse, and he

9  was very lonely, even though he has a loving family and friends

10  who have submitted letters of support to the Court, and they

11  all say that Mr. Feliciano is a generous person, that more than

12  one said that he would give the shirt off his back to help

13  others, but the critical point in this case is the content of

14  the neuropsychological report that has been submitted to the

15  Court because it informs the Court and the parties about why

16  this case occurred.

17          Mr. Gardner just said that the evidence doesn't show

18  one way or the other that Mr. Feliciano was reaching out to

19  others -- other minors.  In fact, there is information in the

20  discovery and we've also looked at Mr. Feliciano's Facebook

21  communications, and during this period, Mr. Feliciano sought to

22  alleviate the loneliness that he suffered by reaching out to

23  others, people he didn't know, on Facebook, reaching out to

24  other people, saying, hi, how are you, people he just wanted to

25  communicate with.

1           The vast majority of those people didn't respond.

2   One did, and that's why we are here.  It is unfortunate that

3   this girl did respond to Mr. Feliciano and they developed this

4   relationship, but it is critical to understand what is in this

5   report that we've submitted as to why that occurred in this

6   case.

7           There is absolutely no other information in the case

8   to suggest that Mr. Feliciano in any way is a pedophile or

9   otherwise was seeking out minors to communicate with, and

10  that's important.  It distinguishes this case from almost every

11  other case that the Court sees with these types of offenses of

12  conviction.

13          It's important for the Court to understand as well

14  the absolutely terrible conditions that Mr. Feliciano has

15  suffered at the Alexandria Detention Center.  It is not because

16  the detention center sought specifically to punish him.  From

17  their perspective, it was to protect him because Mr. Feliciano

18  was the type of person who suffered from threats at the

19  Alexandria Detention Center from other inmates due to the

20  nature of these charges and due to Mr. Feliciano's conditions.

21          He was placed in two isolation wings, and I will tell

22  the Court that we have -- the people who have represented

23  Mr. Feliciano went to see him more than any other client that I

24  have and that most other clients that we have in the office

25  because he was in these conditions of isolation, which the

1  Alexandria Detention Center did to protect him, but what, in

2  fact, they did is they kept him in isolation for 22 and 23

3  hours of a day, and for someone with the deficits that are

4  identified in Dr. James' report, that is particularly difficult

5  because he does not have the tools, does not have the equipment

6  to deal with that kind of treatment.

7        And I say that simply to say to the Court that the

8  sentence that we have asked for, 87 months, is more than

9  sufficient to accomplish the purposes of sentencing.  It is

10 more than sufficient to punish Mr. Feliciano for what he did.

11       He does have strengths, and I think the strengths

12 that he has are, are included in the letters that have been

13 submitted to the Court.  He has loving family.  He has friends

14 who have spoken about his generous nature and, most

15 importantly, about his faith.  It is the most important thing

16 in Mr. Feliciano's life.

17       It is something that has allowed him to survive over

18 the past number of months, and the Court knows he was

19 originally arrested by state authorities.  He was held in

20 Fairfax from March of 2014 and then was handed over to federal

21 officials in the summer, but the reason that he has been able

22 to survive is because of his faith, and I know that he will

23 speak to the Court about that.

24       The last thing I will say to the Court is that in

25 determining what is the appropriate sentence in this case, the

1   Court has to understand that 87 months is not a modest sentence

2   in any way.  It is something that will require Mr. Feliciano to

3   spend years in prison, starting from -- he's 50 years old, so

4   he will not be released until he is well into his fifties or

5   into his late fifties.

6          And the question that the government poses, why

7   should the Court have any assurance that he will change his

8   behavior when he was released -- when he is released, because

9   ultimately he will be released back into the community, and I

10  would say to the Court these two things:

11         First, Dr. James' report reveals that what is

12  important for Mr. Feliciano is that he have vocational training

13  and focus on what he is good at, and that is what I think has

14  allowed him to be a productive citizen for all of his life.  He

15  has no criminal history points.  He loved being a truck driver.

16  That along with his faith were the focus of his life.

17         And the second reason that we can be assured that

18  this will not occur is because there is absolutely no other

19  indication in this case that Mr. Feliciano is a pedophile or

20  otherwise a threat to children.  Mr. Feliciano understands that

21  he is -- the reason that he is here is because he has committed

22  a crime, but he is dedicated to ensuring that he can return to

23  his family and be law-abiding in the future, and that's why we

24  believe 87 months is sufficient to accomplish the purposes of

25  sentencing in this case.

1          THE COURT:  All right.  Mr. Feliciano, come up,

2    please.  Mr. Feliciano, is there any statement you want to make

3    in your own behalf?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  I'm listening.

6          THE DEFENDANT:  There's something I wrote out.

7    Through my faith, I have learned that God is the light, and

8    through his son, we can go to the kingdom of God and only

9    through his son.

10          The man that was arrested nine-and-a-half months ago

11    is gone.  The Lord broke me.  He carried me through these nine

12    months and made me a new man.

13          He took my heart of stone and gave me a heart of

14    flesh.  He took me from the light into the darkness like Job.

15    He took me -- he took all I had and put me in rags.  He threw

16    test after test at me, testing my faith, making me feel hunger

17    and loneliness.  He tested me day after day, and when I faulted

18    him and disobeyed him, he made it worse.

19          But in the last nine months, I came to love God with

20    all my heart.  That sinful man that nine-and-a-half months ago

21    was arrested is gone.  I have a new life in Jesus Christ, and I

22    love him as much as he loves me.

23          Sorry, Your Honor.  Thank you.

24          THE COURT:  Mr. Feliciano, you are before the Court

25    having pled guilty to travel with the intent to illicit --

1  engage in illicit sexual conduct and receipt of child

2  pornography, and as you know, this offense involves your

3  communication with and inappropriate sexual touching of a

4  13-year-old female girl.

5          It was a very troubling case because of the things

6  that you did in terms of the way you were interacting with her,

7  providing her with the cell phone, the photographs, the

8  pictures that were sent by her to you.

9          And it's a remarkable case, there's no indication

10  that you actually had sexual intercourse with her, so that's,

11  that's a fact as well, but a 13-year-old girl is in puberty.

12  She's not able to give consent.  You are too old to be dealing

13  with somebody 13 years old.

14          And your lawyer, to his credit, he's given me some

15  information from Dr. James about your background and your

16  mental health issues, which are real, I think, and I think that

17  they are a factor that I will take into consideration, but you

18  have to know the Court has a very low tolerance for anyone who

19  would engage in an inappropriate sexual relationship with a

20  child, a very low tolerance for that, and my predisposition

21  would be to give you the maximum sentence I could possibly

22  give.  That's my predisposition as a parent, and everyone

23  thinks it's just wrong what you did.

24          But I understand that, you know, given that your IQ

25  is low and the issue that your doctor has pointed out here, the

1    things that I should take into account, and I've considered

2    that the lawyers here have reached what I think is a very fair

3    agreement about what the guideline range should be in this

4    case.

5              And I am, as I said, very disturbed by the number of

6    interactions you had with her and what you did.

7              But your age, which is 50, and the fact that you have

8    no prior record suggests to me you are a low risk for

9    recidivism, and I was very focused on whether or not the mental

10   professional decided -- gave me an indication you have any

11   indicia of pedophilia, and there is no indication of that and

12   no indication from the government one way or the other whether

13   or not this was the only child that you interacted with or

14   whether there were others.

15             So given all those things, I'm going to sentence you

16   to 90 months in the custody of the Bureau of Prisons on each

17   offense, 90 months.  Each sentence is to run concurrent with

18   each other.

19             And I'm going to place you on a term of supervised

20   release.  The supervised release term will be five years, and

21   they will run concurrent with each other and the sentences run

22   concurrent with each other.

23             And the following conditions are going to be imposed

24   on supervised release:  First is you're required to participate

25   in sex offender treatment and mental health treatment,

1    including a psychosexual evaluation.  The cost of those

2    programs will be paid in part by you if you have the ability to

3    pay them, and you're required to waive confidentiality so that

4    the probation officer can speak with any of your mental health

5    professionals involved in your treatment.

6              Under the Adam Walsh Child Safety -- Child Protection

7    Safety Act, you are required to register, which means you've

8    got to show up at a police station and register in any state

9    where you live, work, or attend school, and to register as a

10   sex offender.

11             You are not to possess or to use a computer or access

12   any online service at any location, including employment,

13   without the approval of the probation officer, and that

14   includes using the internet at any public facilities, and allow

15   the probation officer to install any software if they decide

16   it's appropriate to have computer access so that it can be

17   monitored.

18             The computer monitoring program, part of that will be

19   paid by you if you are permitted to have a computer.  I'm not

20   saying that you should have a computer.  I'll let you and the

21   probation officer make a judgment about that, and the probation

22   officer, of course, his response is going to make that

23   judgment.

24             I note you have been employed for eleven years as a

25   truck driver, and you're required to pay child support once you

1   get out of jail and maintain gainful employment in accordance

2   with whatever the ruling is of the court where the child lives.

3           And I will not impose any fine, cost of

4   incarceration, or cost of supervision because I've made a

5   judgment you do not have the ability to pay that.

6           The $100 special assessment for each count has to be

7   paid, which is $200.

8           So to be clear, I've sentenced you to 90 months in

9   the custody of the Bureau of Prisons, placed you on a five-year

10  term of supervised release, with the conditions I just

11  enumerated.

12          MR. KAMENS:  Your Honor, we'd ask for a

13  recommendation of Fort Dix or a facility as close to New Jersey

14  as possible.

15          THE COURT:  All right.  I'll -- well, do you know if

16  they have any sex offender treatment at Fort Dix?

17          MR. KAMENS:  I do not.

18          THE COURT:  Well, let me do this:  I'm hesitant to

19  make that recommendation without learning that Fort Dix has a

20  sex offender treatment program.  I think they're going to look

21  at where he lives --

22          MR. KAMENS:  I can find out by the end of the day,

23  Your Honor.  I could find out by the end of the day if they

24  have a sex offender --

25          THE COURT:  If you let me know by the end of the day,

1    I'll consider that, but unless they have one, I'm not willing

2    to make that recommendation.

3              MR. KAMENS:  Understood.

4              THE COURT:  All right, thank you.

5              MR. KAMENS:  Thank you, Your Honor.

6              MR. GARDNER:  Thank you.

7              THE COURT:  You-all are dismissed.

8              MR. KAMENS:  Just to be clear, that he should receive

9    credit from his incarceration in Fairfax?

10             THE COURT:  Well, let me see what the

11   probation -- the presentence report says.  I believe it should

12   be on the face of the report.

13             MR. KAMENS:  It does say on the face.

14             THE COURT:  He will get credit for time served from,

15   it says, March 14, 2014, to June 26, 2014.

16             MR. KAMENS:  Right.  Thank you.

17             MR. GARDNER:  I think that would be appropriate as

18   well.

19             THE COURT:  All right.  I'll put that in the order.

20             Thank you very much.  You-all are excused.

21                              (Which were all the proceedings

22                               had at this time.)

23

24

25

1                    CERTIFICATE OF THE TRANSCRIBER

2          I certify that the foregoing is a true and correct

3     transcript, to the best of my ability, of the above pages, of

4     the stenographic notes of Renecia A. Smith-Wilson, provided to

5     me by the Eastern District of Virginia, Alexandria Division, of

6     the proceedings taken on the date and time previously stated in

7     the above matter.  I further certify that I am neither counsel

8     for, related to, nor employed by any of the parties to the

9     action in which this hearing was taken, and further that I am

10    not financially nor otherwise interested in the outcome of the

11    action.

12

13                            _____/s/_____
                                        Anneliese J. Thomson
14

15

16

17

18

19

20

21

22

23

24

25